IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:14-CV-10-FL

| | | |
|---|---|---|
| PHYLLIS LATKA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| DR. DAVID MILES and | ) | |
| NEW HANOVER REGIONAL MEDICAL | ) | |
| CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

This wrongful death action based on medical malpractice comes before the court on the motions to dismiss by defendants Dr. David Miles ("Dr. Miles") (D.E. 16) and New Hanover Regional Medical Center ("NHRMC") (D.E. 26) (collectively, "defendants"). Both defendants move to dismiss the complaint filed by pro se plaintiff Phyllis Latka ("plaintiff"), widow of the decedent, Lester Latka ("Mr. Latka"), pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure[1] for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Dr. Miles also moves to dismiss for lack of personal jurisdiction due to improper service pursuant to Rule 12(b)(2), (4), and (5). Plaintiff opposes both motions. The motions were referred to the undersigned Magistrate Judge for issuance of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (*see* Public D.E. dated 23 June 2014) and are ripe for adjudication. For the reasons and on the terms set forth below, it will be recommended that defendants' motions be denied.

---

[1] Unless otherwise indicated, all references to rules herein are to the Federal Rules of Civil Procedure.

## BACKGROUND

In her complaint (D.E. 4), filed 3 February 2014, plaintiff alleges as follows: On 13 September 2011, Mr. Latka was admitted to NHRMC for hernia surgery, which was performed that day by Dr. Miles. (Compl. 2). The following day, Mr. Latka started to show signs of severe internal bleeding, including elevated heart rate, distention of the stomach, flank hematoma and ecchymosis, dark blood in vomit and feces, acute renal failure, nausea, and lack of appetite. (*Id.*). Defendants improperly failed to treat Mr. Latka in response to these signs. (*Id.* at 3). As a result, he bled to death on 18 September 2011. (*Id.*). The complaint appears to assert a claim for wrongful death, pursuant to N.C. Gen. Stat. § 28A-18-2, based on medical malpractice and including a claim for loss of consortium damages. There are several attachments to the complaint (D.E. 4-1), including photographs of Mr. Latka.

By their dismissal motions, both defendants challenge the court's subject matter jurisdiction on the grounds that plaintiff lacks standing and that her case does not meet the requirements for diversity jurisdiction. Dr. Miles challenges the court's personal jurisdiction over him for lack of proper service. Finally, both defendants contend that the complaint fails to state a claim because the statute of limitations bars the wrongful death cause of action asserted and the complaint lacks the allegation required under North Carolina Rule of Civil Procedure 9(j) that a potential expert witness is willing to testify that the medical care received did not comply with the applicable standard of care.

2

<u>**DISCUSSION**</u>

## I. DEFENDANTS' CHALLENGES TO SUBJECT MATTER JURISDICTION

### A. Standing

The jurisdiction of federal courts to entertain suits is limited by Article III of the United States Constitution to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; *see also Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009). "'[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process,' and thus meet the requirements of Article III," including the case and controversy requirement. *Bishop*, 575 F.3d at 423 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990)); *see also Friends for Ferrell Parkway, LLC v. Stasko,* 282 F.3d 315, 319 (4th Cir. 2002) (noting that the standing requirement is designed to ensure that "the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate").

Thus, to satisfy the Article III standing requirement, "a plaintiff must establish that a 'case or controversy' exists 'between himself and the defendant' and 'cannot rest his claim to relief on the legal rights or interests of third parties.'" *Smith v. Frye*, 488 F.3d 263, 272 (4th Cir. 2007) (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)); *Dyson v. Le'Chris Health Sys., Inc.*, No. 4:13-CV-224-BO, 2014 WL 5171542, at *1 (E.D.N.C. 14 Oct. 2014) ("'Generally, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'" (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991))). Specifically, a plaintiff must show that: "'(1) he has suffered an injury in fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Emery v. Roanoke City Sch. Bd*, 432 F.3d 294, 298 (4th Cir. 2005) (quoting *Stasko*,

3

282 F.3d at 320). As the foregoing indicates, the plaintiff bears the burden of establishing standing. *See Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).

A related challenge to standing is a contention that the plaintiff is not the real party in interest, pursuant to Rule 17. This rule provides that "[a]n action must be prosecuted in the name of the real party in interest," though an executor or administrator, among others, "may sue in their own names without joining the person for whose benefit the action is brought." Fed. R. Civ. P. 17(a)(1). Rule 17 further provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." Fed. R. Civ. P. 17(a)(3).

Under North Carolina law, the real party in interest with respect to a wrongful death action and thereby the person who must bring such an action is the decedent's personal representative or collector. *Daniels v. Nat'l R.R. Passenger Corp.*, No. 5:11–CV–290–BO, 2011 WL 5870056, at *1-2 (E.D.N.C. 22 Nov. 2011); N.C. Gen. Stat. § 28A-18-2(a). The personal representative may be either the administrator or executor of the decedent's estate. N.C. Gen. Stat. § 28A-1-1(5).

Defendants contend that plaintiff lacks standing and is not the real party in interest because she did not allege in the complaint that she has been duly appointed as the personal representative of her husband's estate and thereby has not established that she has the capacity to assert the wrongful death claim set out in the complaint. It is true that the complaint does not specifically allege that plaintiff has been appointed her husband's personal representative. However, in response to Dr. Miles' motion, plaintiff filed letters of administration issued on 5

4

June 2013 by the Clerk of Superior Court of Brunswick County naming her as administrator of her husband's estate ("Letters") (D.E. 24-2 at 6).[2]  The court may properly consider the Letters in evaluating whether plaintiff meets the standing requirement even though they are outside the complaint. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (holding that court may consider matters beyond the pleadings on Rule 12(b)(1) motion without converting the motion to one for summary judgment).  The Letters satisfy the court that plaintiff was properly ratified as her husband's personal representative and entitled to commence this lawsuit.

NHRMS contends that even if the Letters establish that plaintiff is her husband's personal representative, she should be disqualified to serve as such because her complaint indicates that she is a resident of New York and North Carolina law requires a nonresident of the state to appoint "a resident agent to accept service of process in all actions or proceedings with respect to the estate, and cause[] such appointment to be filed with the court." N.C. Gen. Stat. § 28A-4-2(4).  There is no indication that plaintiff has made the requisite appointment. Nonetheless, NHRMC's objection goes to the sufficiency of plaintiff's compliance with state law requirements and not whether she meets the requirements for standing.  This objection is accordingly outside the scope of the court's analysis concerning jurisdictional requirements. *See Mintz v. United States*, No. 87-3032, 1988 WL 21222, at \*3 (4th Cir. 7 Mar. 1988) ("Here, the district court went beyond the appropriate scope of its inquiry and undertook an examination of the administratrix's qualifications when it was apparent from the record that she had been duly qualified by a probate court of competent jurisdiction in South Carolina.  This

---

[2] The Letters refer to the decedent as "Leskez Latka," but the court presumes, as defendants do (*see* D.E. 28 at 8 n.3), that this refers to the Lester Latka named in the complaint.

5

matter is left to the exclusive jurisdiction of the state probate court and the entire inquiry should have been avoided by the district court.").

The court concludes that defendants' challenge to plaintiff's standing fails. To accurately reflect the capacity in which plaintiff is proceeding in this case, it will be recommended that the caption be revised to include the phrase, "as Administrator of the Estate of Lester Latka," after plaintiff's name and that the Clerk be directed to file a copy of the Letters as an exhibit to the complaint. Under Rule 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Hence, making the Letters an exhibit to the complaint would document therein the capacity in which plaintiff is suing. *See Tallman v. City of Gastonia*, 200 N.C. App. 13, 23, 682 S.E.2d 428, 434-35 (2009) (holding it appropriate to allow wife's change in capacity to administratrix after complaint was filed to relate back to original filing and constitute the estate's ratification of the lawsuit).

### B.    Diversity Jurisdiction

Federal district courts are courts of limited jurisdiction, having the power to hear only cases which the Constitution or Congress, via statute, has granted them the power to hear. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Congress has granted federal courts subject matter over a variety of matters, the most common of which are: federal question jurisdiction, where the party invoking federal jurisdiction alleges that the action arises under the Constitution, statutes, or treaties of the United States, 28 U.S.C. § 1331; and diversity jurisdiction, where the parties are citizens of different states and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332. For the purposes of diversity jurisdiction, state citizenship is determined by domicile, not residence, and a party's citizenship "cannot be inferred from

6

allegations of mere residence, standing alone." *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 663 (4th Cir. 1998) (citations omitted). "To establish domicile, 'there must be both a change of residence and an intent to remain at the new residence indefinitely; the old domicile continues even when there is a change of residence until there is an intent to create a new home.'" *Am. Heartland Port, Inc. v. Am. Port Holdings, Inc.*, No. 5:11CV50, 2014 WL 1123384, at *3 (N.D.W. Va. 21 Mar. 2014) (quoting *Dryer v. Robinson*, 853 F. Supp. 169, 172 (D. Md. 1994)). The court considers the totality of the circumstances in determining a party's domicile. *Brissett v. Shoaf Law Firm, P.A.*, No. 5:12–CV–781–FL, 2013 WL 6713123, at *4 (E.D.N.C. 19 Dec. 2013).

"[T]he party who seeks the exercise of jurisdiction in his favor" has the burden to "allege in his pleading facts essential to show jurisdiction." *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936). "A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). Failure to include such a statement is not fatal, however, if the plaintiff is proceeding pro se, as here. *See Moore v. Mt. St. Joseph High School*, No. CCB-14-1788, 2014 WL 4854625, at *1 (D. Md. 29 Sep. 2014) ("Although [pro se plaintiff's] complaint lacks any such 'short and plain statement of the grounds for the court's jurisdiction,' that omission alone is not fatal, for the court may still wield 'jurisdiction if the facts supporting jurisdiction have been clearly pleaded.'" (quoting *Pinkley, Inc. v. City of Frederick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999)); *Morrison v. Monroe*, No. 7:10-CV-132-FL, 2010 WL 5055985, at *3 (E.D.N.C. 6 Dec. 2010) (proceeding to substantive analysis of jurisdiction claim where pro se plaintiff failed to include Rule 8(a)(1) jurisdictional statement in the complaint).

7

### 1. Diversity of Citizenship Requirement

In her complaint, plaintiff alleges that after her husband died, her house was foreclosed on "forcing me to move back to N[ew] Y[ork] with my family around." (Compl. 3). Defendants contend that this allegation shows simply that plaintiff is a resident of New York, not a domiciliary, and that she should therefore be deemed to continue to be a citizen of North Carolina. Because it is undisputed that defendants are citizens of North Carolina, plaintiff's purported status as a citizen of North Carolina defeats the requisite diversity of citizenship. The court disagrees with defendants' analysis.

The clear implication of plaintiff's allegation is that with her husband dead and her house in North Carolina gone, she was going back to New York to live around other family she has there. Where a party alleges that he has moved to a new state and engages in behaviors indicating an intention to change his domicile to that new state, a court is permitted to find that the party has in fact changed domicile. *Johnson v. Xerox Educ. Solutions LLC*, No. GJH–14–CV–15422, 2014 WL 5361302, at *2 (D. Md. 20 Oct. 2014) ("[A]n individual's residence at the time a lawsuit is commenced provides prima facie evidence of his domicile." (citing *District of Columbia v. Murphy*, 314 U.S. 441, 455 (1941) ("The place where a man lives is properly taken to be his domicile until facts adduced establish to the contrary.")); *see also Johnson v. Advance Am., Cash Advance Ctrs. of S.C., Inc.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008) (establishing domicile "requires physical presence, coupled with an intent to make the State a home"). The court concludes that the totality of the circumstances alleged show that she was a citizen of New York when she commenced this case. This challenge by defendants to subject matter jurisdiction therefore fails.

8

## 2. Amount in Controversy Requirement

The starting place for determination of the amount in controversy is the complaint. *JTH Tax, Inc. v. Frashier,* 624 F.3d 635, 638 (4th Cir. 2010); *Thind v. PNC Bank, Nat. Ass'n,* No. 5:13–CV–00619–FL, 2013 WL 6326600, at *2 (E.D.N.C. 4 Dec. 2013) ("Generally, 'the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy . . . .'" (quoting 28 U.S.C. § 1446(c)(2))). Where, as here, however, there is no *ad damnum* clause in the complaint seeking an amount exceeding $75,000, the burden is on the plaintiff to establish by a preponderance of the evidence that the jurisdictional minimum is nevertheless met. *Tabor v. Tabor,* No. 2:13-cv-20643, 2013 WL 5670916, at *2 (S.D.W. Va. 15 Oct. 2013); *Joy Family Ltd. Ptshp. v. United Fin. Banking Cos.*, No. ELH-12-3741, 2013 WL 4647321, at *7 (D. Md. 28 Aug. 2013). In determining whether plaintiff has met this burden, the court may consider the entire record, including "'the type and extent of the plaintiff's injuries and the possible damages recoverable therefor[].'" *Tabor,* 2013 WL 5670916, at *2 (quoting *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 489 (S.D.W. Va. 2001)).

In making "its own independent inquiry to determine whether the amount in controversy satisfies the jurisdictional minimum," the court is "not required 'to leave common sense behind.'" *Tominak v. Capoullez,* No. 5:13–CV–121, 2013 WL 5913848, at *3 (N.D.W. Va. 4 Nov. 2013) (quoting *Mullins v. Harry's Mobile Homes*, 861 F. Supp. 22, 24 (S.D.W. Va. 1994)). In addition, the court need not weigh the underlying merits of the plaintiff's claims. *A2C2 P'ship LLC v. Constellation Software, Inc.*, No. 2:13–cv–01449, 2013 WL 5204756, at *2 (13 Sept. 2013). Instead, it should consider "'the judgment that would be entered if the plaintiff prevailed on the merits of his case.'" *Id.* (quoting *Sayre v. Potts*, 32 F. Supp. 2d 881, 886 (S.D.W. Va. 1999)); *Burdette v. ReliaStar Life Ins. Co.,* No. 2:06-0210, 2006 WL 1644234,

9

at *1 (S.D.W. Va. 12 Jun. 2006) ("If not specified in the complaint, the amount in controversy must be determined on the likely monetary relief that may be granted to a plaintiff if he succeeds on all of his claims asserted in good faith.").

Here, plaintiff asserts a claim for wrongful death which is based on medical malpractice and includes a claim for loss of consortium. Common sense suggests that, if successful, such a claim would result in damages easily exceeding the jurisdictional amount. Beyond that, however, the complaint specifies that as a result of her husband's death, she has lost his earnings of $3,100 a month, as well as disability payments in an unspecified amount. (Compl. 3). Her complaint was filed almost 29 months after her husband's death, making the damages for lost earnings alone more than $89,000 at the time the complaint was filed. Further, as noted, plaintiff alleges in her complaint that her husband's death also resulted in her home being foreclosed upon (Compl. 3), and she states in her response to NHRMC's motion that the home was worth $350,000 (D.E. 29 at 1 ¶¶ 1, 2).

The court concludes that plaintiff has shown by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000. The court therefore rejects this final challenge to the court's subject matter jurisdiction.

## II.   DR. MILES' CHALLENGE TO PERSONAL JURISDICTION

A plaintiff bears the burden of proving that service of process was proper. *Elkins v. Broome*, 213 F.R.D. 273, 275 (M.D.N.C. 2003). Litigants proceeding pro se are permitted more latitude to correct defects in service, *Fenner v. John Umstead Hosp.*, No. 1:09CV977, 2014 WL 257274, at *2 (M.D.N.C. 23 Jan. 2014), and "[d]ismissal under Rule 12(b)(5) is 'not justified where it appears that service can be properly made.'" *Thompson v. Hanson*, No. 4:13–

10

CV–194–BR, 2014 WL 5810231, at *1 (E.D.N.C. 7 Nov. 2014) (quoting *Plant Genetic Sys.,*

*N.V. v. Ciba Seeds*, 933 F. Supp. 519, 527 (M.D.N.C. 1996)).

The requirements for service of process are prescribed in Rule 4. Fed. R. Civ. P. 4. It

permits service by state law or by the means specified in the rule:

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
>     (A) delivering a copy of the summons and of the complaint to the individual personally;
>     (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>     (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Under Rule 4 of the North Carolina Rules of Civil Procedure, service on an individual is

effected:

> a. By delivering a copy of the summons and of the complaint to the natural person or by leaving copies thereof at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein.
> b. By delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to be served or to accept service of process or by serving process upon such agent or the party in a manner specified by any statute.
> c. By mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee.
> d. By depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the party to be served, delivering to the addressee, and obtaining a delivery receipt. As used in this sub-subdivision, "delivery receipt" includes an electronic or facsimile receipt.

e. By mailing a copy of the summons and of the complaint by signature confirmation as provided by the United States Postal Service, addressed to the party to be served, and delivering to the addressee.

N.C.R. Civ. P. 4(j)(1).

Here, it is not disputed that plaintiff attempted service of process on Dr. Miles by sending the complaint to his workplace by certified mail return, receipt requested, where it was signed for by Michelle Russ of Miles Surgical, PLLC. (*See* Return of Serv. on Dr. Miles (D.E. 12) 3-4). Receipt by Ms. Russ would constitute valid service only if receipt by certified mail were deemed "delivery" under Federal Civil Rule 4 and North Carolina Civil Rule 4, and Ms. Russ were an agent for receipt of service for Dr. Miles. *See* Fed. R. Civ. P. 4(e)(2)(C); N.C.R. Civ. P. 4(j)(1)b. There is no indication that Ms. Russ was Dr. Miles' registered agent, and Dr. Miles states that she was not. The court accordingly finds that plaintiff failed to comply with the requirements for personal service on Dr. Miles under federal or North Carolina law.

However, because plaintiff is proceeding pro se and there would be no apparent prejudice to Dr. Miles from allowing plaintiff to attempt to serve him again, plaintiff should be permitted this opportunity. It will therefore be recommended that plaintiff be allowed 45 days from the date of the court's order on this Memorandum and Recommendation to again attempt service of process on Dr. Miles.[3] *See Thompson*, 2014 WL 5810231, at *2 (denying motion to dismiss on basis of insufficient service and instead allowing pro se plaintiff additional time to attempt proper service again). If service is not effected by that deadline, this case may be dismissed as to Dr. Miles on motion of Dr. Miles or the court's own initiative after notice to plaintiff, pursuant to Rule 4(m).

---

[3] While Rule 4(d) establishes a procedure for waiver of service of process by a defendant, it seems unlikely, given Dr. Miles' challenge to service of process, that he would waive and the time permitted a defendant to respond to a request for waiver, at least 30 days (*see* Rule 4(d)(1)(F)), would make it perilous for plaintiff to rely on a waiver given the recommended extension of 45 days.

12

## III. DEFENDANTS' CHALLENGES TO THE MERITS OF PLAINTIFF'S CLAIM

### A. Standard of Review under Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Ordinarily, the complaint need contain simply "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (internal quotation marks omitted)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the plaintiff alleges factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and shows more than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded allegations of the challenged complaint and view those allegations in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *see also Lambeth v. Bd. of Comm'rs*, 407 F.3d 266, 268 (4th Cir. 2005) (court must accept as true all factual allegations of the

13

complaint). All reasonable factual inferences from the allegations must be drawn in plaintiff's favor. *Edwards*, 178 F.3d at 244. However, bare assertions of legal conclusions or formulaic recitations of the elements of a claim are not entitled to be assumed true. *Iqbal*, 556 U.S. at 681.

In considering a motion to dismiss, a court may consider documents attached to the complaint so long as the documents are integral to the complaint and authentic. *See Secretary of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Moreover, the court need not accept as true allegations that are contradicted by exhibits to the complaint. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Typically, potential defenses are not raised in a Rule 12(b)(6) motion. *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996). But a statute of limitations defense may be raised in a Rule 12(b)(6) motion where that defense appears clearly on the face of the complaint. *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993).

## B.     Wrongful Death Statute of Limitations

The statute of limitations prescribed by the law of the forum state governs claims brought in federal court pursuant to diversity jurisdiction. *Bonham v. Weinraub*, 413 Fed. Appx. 615, 616 (4th Cir. 2011) (stating that in a case "based on diversity of citizenship, the substantive law of the forum state is controlling" and noting that statutes of limitations are considered substantive). North Carolina provides a two-year period in which to file a wrongful death action. N.C. Gen. Stat. § 1-53(4); *Johnson v. Holiday Inn of Am., Inc.*, 895 F. Supp. 97, 99-100 (M.D.N.C. 1995). A wrongful death action accrues at the death of the

14

decedent. N.C. Gen. Stat. § 1-53(4); *Arrowood v. Gen. Motors Corp.*, 539 F.2d 1321, 1325 (4th Cir. 1976). Any claim for medical malpractice underlying the wrongful death claim is encompassed by the wrongful death claim and thereby subject to the same statute of limitations and related requirements. *See, e.g., Brown v. Kindred Nursing Centers East, L.L.C.*, 364 N.C. 76, 89, 692 S.E.2d 87, 95 (2010); *Estate of Wooden ex rel. Jones v. Hillcrest Convalescent Ctr., Inc.*, __ N.C. App. __, 731 S.E.2d 500, 503 (2012); *Carlton v. Melvin,* 205 N.C. App. 690, 692, 697 S.E.2d 360, 362 (2010); *Howard v. Vaughn,* 155 N.C. App. 200, 202-03, 573 S.E.2d 253, 255 (2002). A claim for loss of consortium with the decedent is also encompassed by the wrongful death action and is also subject to the same statute of limitations and related requirements. N.C. Gen. Stat. § 28A-18-2(b)(4)c; *Nicholson v. Hugh Chatham Mem'l Hosp., Inc.*, 300 N.C. 295, 302, 266 S.E.2d 818, 822 (1980); *Keys v. Duke Univ.*, 112 N.C. App. 518, 521-22, 435 S.E.2d 820, 821 (1993).

A wrongful death claim based on an underlying claim for medical malpractice is subject to North Carolina Civil Rule 9(j). *See, e.g., Brown*, 364 N.C. at 89, 692 S.E.2d at 95; *Estate of Wooden*, 731 S.E.2d at 503; *Carlton*, 205 N.C. App. at 692, 697 S.E.2d at 362; *Howard*, 155 N.C. App. at 202-03, 573 S.E.2d at 255. North Carolina Civil Rule 9(j) provides that, prior to the expiration of the applicable statute of limitations, a plaintiff may move for an extension of up to 120 days to file a complaint in a medical malpractice action in order to comply with the special pleading requirement under that provision. N.C.R. Civ. P. 9(j).[4] The special pleading,

---

[4] The extension provision reads:

Upon motion by the complainant prior to the expiration of the applicable statute of limitations, a resident judge of the superior court for a judicial district in which venue for the cause of action is appropriate under G.S. 1-82 or, if no resident judge for that judicial district is physically present in that judicial district, otherwise available, or able or willing to consider the motion, then any presiding judge of the superior court for that judicial district may allow a motion to extend the statute of limitations for a period not to exceed 120 days to file a complaint in a medical

15

or so-called certification, requirement is, in relevant part, that the complaint include an allegation that a person who is reasonably expected to testify as an expert witness has reviewed the medical care and all reasonably available medical records relating to the alleged negligence and that such person is willing to testify that the medical care received did not comply with the applicable standard of care. *Id.*(j)(1).[5] "The North Carolina General Assembly enacted Rule 9(j) 'in part, to protect defendants from having to defend frivolous medical malpractice actions by ensuring that before a complaint for medical malpractice is filed, a competent medical professional has reviewed the conduct of the defendants and concluded that the conduct did not meet the applicable standard of care.'" *Baker v. United States*, No. 5:11–CT–3070–D, 2013 WL 211254, at *5 (E.D.N.C. 18 Jan. 2013) (quoting *Estate of Waters v. Jarman*, 144 N.C. App. 98, 100 (2001)).

Here, as noted, plaintiff asserts a wrongful death claim including encompassed claims for medical malpractice and loss of consortium. Thus, the two-year statute of limitations in N.C. Gen. Stat. § 1-53(4) applies to plaintiff's claim. Mr. Latka died on 18 September 2011 and the limitations period began to run on that date. (*See* Compl. 3). The two-year limitations

---

malpractice action in order to comply with this Rule, upon a determination that good cause exists for the granting of the motion and that the ends of justice would be served by an extension.

N.C.R. Civ. P. 9(j).
[5] North Carolina Rule 9(j)(1) provides:

Any complaint alleging medical malpractice by a health care provider . . . shall be dismissed unless: (1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care

N.C.R. Civ. P. 9(j)(1). A complaint may also avoid dismissal if it makes essentially the same allegation with respect to a person whom the complainant will seek to have qualified as an expert witness by motion if the motion is filed with the complaint, or if the complaint alleges negligence based on *res ipsa loquitur. See* N.C.R. Civ. P. 9(j)(2), (3). These other provisions are not implicated because no motion for qualification of an expert witness was filed with the complaint and the complaint does not allege negligence based on *res ipsa loquitur.*

16

period under N.C. Gen. Stat. § 1-53(4) therefore extended to 18 September 2013. Prior to that date, on 12 September 2013, plaintiff (in this instance acting through counsel) obtained an order (D.E. 24-2 at 1) from the Superior Court of New Hanover County, North Carolina, extending the statute of limitations to 16 January 2014, pursuant to North Carolina Civil Rule 9(j).

NHRMC acknowledges that plaintiff obtained the extension,[6] but contends that this case is still untimely because plaintiff did not file her complaint until 3 February 2014, several weeks after the extended deadline.[7] (NHRMC Mem. (D.E. 28) 9). What NHRMC fails to note, however, is that plaintiff commenced this action on 13 January 2014 when she filed her motion for leave to proceed in forma pauperis ("IFP") (D.E. 1). "[T]he filing of a motion to proceed in forma pauperis 'tolls the statute of limitations until the court rule[s] on the IFP application.'" *Charles v. Donahoe,* No. 3:12CV402–RJC–DSC, 2013 WL 1798236, at *1 (W.D.N.C. 21 Feb. 2013) (quoting *Roach v. Hilton World–Wide, Inc.,* No. 5:12-cv-309-D, 2013 WL 556195, at *3 (E.D.N.C. 12 Feb. 2013)), *mem. and recomm. adopted by*2011 WL 1798112 (29 Apr. 2013). Here, the court ruled on plaintiff's IFP motion on 15 January 2014. (*See* D.E. 3). In the order denying plaintiff's motion to proceed IFP, the court directed plaintiff to pay the filing fee no later than 12 February 2014 or risk dismissal of her case. (*Id.*). Plaintiff timely paid the filing fee and filed her complaint pursuant to that order on 3 February 2014. (*See* 1st D.E. dated 3 Feb. 2014; Compl. 1).

---

[6] Dr. Miles does not address the 12 September 2013 extension order in his motion and may not have been aware of it until plaintiff responded to his motion to dismiss (*see* D.E. 24) and attached the order as an exhibit to her response to Dr. Miles' dismissal motion. Dr. Miles did not file a reply addressing the impact of the order.

[7] NHRMC also argues that that the state court order has no effect at all, relying on *Cannon v. Kroger Co.,* 832 F.2d 303, 304-05 (4th Cir. 1987). In *Cannon,* however, the court held that the state court extension did not serve to extend any applicable *federal* limitations periods. 832 F.2d at 305. It did not hold, as NHRMC contends, that a state court judge could not effectively extend a statute of limitations for a state claim, nor does NHRMC cite any decision making this holding.

The court concludes that defendants' challenge to plaintiff's complaint based on the statute of limitations is without merit. The court accordingly rejects it.

## C.    North Carolina Civil Rule 9(j)(1) Special Pleading Requirement

It is indisputable that plaintiff's complaint does not itself contain the allegation required by North Carolina Civil Rule 9(j)(1) (or, as noted above, the alternative allegation in subsection (j)(2)). As noted, the required allegation is that a person who is reasonably expected to testify as an expert witness has reviewed the medical care and all reasonably available medical records relating to the alleged negligence and that such person is willing to testify that the medical care received did not comply with the applicable standard of care. Defendants argue that omission of the allegation from the complaint itself triggers the directive in North Carolina Civil Rule 9(j) that a complaint not containing the requisite allegation be dismissed.

But attached as an exhibit to plaintiff's complaint is a statement by Frederick L.H. Sabido, M.D., entitled "Possible Plaintiff Case Expert Review" and dated 28 February 2013. (Dr. Sabido's Stmt. (D.E.4-1) 1-2)). The statement indicates that Dr. Sabido is employed by Richmond Surgical Associates PLLC and serves as a member of the Faculty of the American College of Surgeons and a Clinical Assistant Professor of Surgery at the College of Medicine at the State University of New York Downstate Medical Center. (*Id.* at 1, 2). In the statement, Dr. Sabido reviews in great detail the medical care received by Mr. Latka and opines repeatedly that it was substandard. He stated:

1. The patient was never a surgical candidate and there was no indication for surgery. A preoperative CT scan demonstrates that there was an 8 cm hernia in the right inguinal canal with fluid and bowel present. However contrast did pass through the hernial sac without any evidence of obstruction. The CAT scan is dictated as no evidence of incarceration. The patient is an ASA class IV with cirrhosis, hepatitis C, varices, hypertension, insulin-dependent diabetes mellitus, severe thrombocytopenia, diastolic heart disease, chronic obstructive pulmonary disease, and chronic renal failure.

18

2. Platelet count of less than 60,000 is a strict contraindication to any elective surgery or invasive procedure. The platelet count prior to the surgery in this case was 50,000. In order to proceed with an emergency surgery with this platelet count at least 20 units of platelets should have been transfused intraoperatively. The medical record documents two units being transfused by the surgical house staff, but there was no documentation of any platelets being given during the operation by the anesthesia record.

3. The prothrombin time (PT) is 14. Fresh frozen plasma was ordered for the end of the operation after getting significant bleeding without resolution. The INR preoperatively was 1.34.

4. There were no clearance cultures completed for VRE prior to surgery with the intent of placing a mesh during the hernia repair.

5. Fresh frozen plasma should have been given intraoperatively and not ordered at the end of the case to be given in the recovery room. Using thrombin spray during surgery for hemostasis is not standard of care.

6. There was definite ongoing bleeding during the case as the surgeon asks for a large piece of Surgicel (8 cm x 6 cm) as evidenced in his operative report. Platelets were never transfused intraoperatively, which is a major departure of standard of practice.

7. Injecting Marcaine which is a vasodilator to a cirrhotic patient during surgery is a departure from a standard of practice as this will definitely cause more bleeding.

8. The surgeon should have never left the operating room and closed the incision without achieving hemostasis with the normal blood pressure. In addition, the surgeon took extra time to perform an ilioinguinal neurectomy which is not standard of care.

9. In the postanesthesia care unit, there were multiple ecchymoses noted and abrasions and skin tears over the inguinal region after surgery. There was evidence of an ongoing expanding retroperitoneal hematoma extending to the abdomen and causing abdominal distension and there was no action taken.

10. The patient had acute renal failure with a creatinine of 3.3 after surgery and was severely volume depleted. The patient was not aggressively resuscitated and given simple volume expanders like fresh frozen plasma and platelets in addition to IV fluids which would correct the problem immediately.

11. Given the acute abdominal distention and flank hematoma and ecchymosis, this was a sign of acute retroperitoneal bleeding which was not addressed.

12. The patient's coagulopathy was never corrected and the patient died with an INR of 2.6 without any further fresh frozen plasma given except for the one unit ordered initially in the recovery room. There is complete mismanagement of the coagulation profile and more blood products should have been given aggressively to correct the patient's INR to prevent any other spontaneous bleeding especially given the history of esophageal varices and multiple bleeding episodes.

(Dr. Sabido's Stmt. 1-2). Because Dr. Sabido's statement is an exhibit to the complaint, it is deemed a part of the complaint. *See* Fed. R. Civ. P. 10(c).

Notwithstanding the information contained in Dr. Sabido's statement, Dr. Miles contends, incredibly, that plaintiff's complaint is "completely devoid of any reference whatsoever to the standard of care, deviations from the standard of care, or any review of this matter."[8] (Dr. Miles' Mem. (D.E. 18) 7). While NHRMC acknowledges the filing of Dr. Sabido's statement, it conclusorily states that it is insufficient to satisfy Rule 9(j).

The court finds that Dr. Sabido's statement is sufficient to satisfy plaintiff's obligation under Rule 9(j)(1). The statement adequately demonstrates that Dr. Sabido may reasonably be expected to qualify as an expert witness, that he reviewed the medical care received by Mr. Latka and the available related records, and that he is willing to testify that the medical care did not comply with the applicable standard of care. *See Baker*, 2013 WL 211254, at \*5. Defendants are free to challenge the merits of the opinions Dr. Sabido expresses and the sufficiency of his statement under Rule 9(j)(1) during discovery. *See Rudisill v. U.S.*, No. 5:13–CV–110–F, 2014 WL 1117976, at \* 4 (E.D.N.C. 20 Mar. 2014) ("Rather than deciding the case on the technical pleading rules, the court prefers to decide the Rule 9(j) certification issue based on the actual merits of the certification as disclosed in discovery." (citing *Ford v. McCain*, 192 N.C. App. 667, 672, 666 S.E.2d 153, 157 (2008)).

The court concludes that defendants' challenge to plaintiff's compliance with North Carolina Rule 9(j) is meritless. The other aspects of defendants' motions having also been found to be meritless, it will be recommended that they be denied in their entirety.

---

[8] Plaintiff herself made two references in her complaint to the "standard of care." (Compl. 2).

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the court enter an order providing that:

(1)     the motions to dismiss filed by defendants (D.E. 16, 26) be DENIED;

(2)     the caption of this case be amended by inserting after plaintiff's name the phrase "Administrator of the Estate of Lester Latka,";

(3)     the Clerk be directed to file as an exhibit to the complaint the Letters (D.E. 24-2 at 6); and

(4)     plaintiff be permitted 45 days from the filing of the court's order on this Memorandum and Recommendation in which to effect service of process on Dr. Miles.

IT IS ORDERED that the Clerk shall send copies of this Memorandum and Recommendation to plaintiff, who shall have until 23 February 2015, or such other date as specified by the court, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after the filing of the objections.

This, the 9th day of February 2015.

James E. Gates
United States Magistrate Judge

21