IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:14-CV-10-FL

| | | |
|---|---|---|
| PHYLLIS LATKA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| DR. DAVID MILES and NEW | ) | |
| HANOVER REGIONAL MEDICAL | ) | |
| CENTER | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendant Dr. David Miles' ("Miles") motion to dismiss, pursuant Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6) (DE 16). Also pending before the court is defendant New Hanover Regional Medical Center's ("NHRMC") motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (DE 26). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge James E. Gates entered a memorandum and recommendation ("M&R") wherein it is recommended the court deny the motions to dismiss. Plaintiff filed a response to the M&R,[1] and defendants each filed separate objections to the M&R. Plaintiff subsequently responded to defendants' objections. In this posture, the issues raised are ripe for ruling. For the reasons stated below, the court will reject the recommendation of the M&R and grant the motions to dismiss.

---

[1] Plaintiff's response thanks the magistrate judge and records her agreement with his recommendation.

## BACKGROUND

Plaintiff, who proceeds *pro se*, commenced this wrongful death action on January 13, 2014, by filing a motion for leave to proceed *in forma pauperis*, attaching a copy of her proposed complaint. Two days later, order issued denying plaintiff's motion and directing she pay the filing fee by February 12, 2014. Plaintiff paid her filing fee and filed her complaint February 3, 2014.

Defendant Miles filed his motion to dismiss on April 10, 2014, arguing that 1) plaintiff's claims are barred by the statute of limitations; 2) the complaint fails to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure; 3) plaintiff lacks standing; 4) plaintiff fails to establish subject matter jurisdiction; and 5) plaintiff failed to effect proper service. On May 14, 2014, defendant NHRMC filed its motion to dismiss, raising arguments on similar grounds, with the exception of lack of service. Plaintiff timely responded to both motions, and subsequently filed a document titled "sur-reply."

Plaintiff appended a number of documents to her responses to defendants' motions to dismiss, including 1) a motion and order issued by the Superior Court of New Hanover County (N.C.), extending plaintiff's time to comply with Rule 9(j); 2) letters of administration over the estate of Leszek Latka, issued to plaintiff by the Clerk of the Superior Court of Brunswick County (N.C.); 3) renunciations of rights to qualify for letters testamentary or letters of administration, signed by Jason Latka and Jennifer Roth; and 4) waivers of personal representative's bond, signed by Jason Latka and Jennifer Roth. Additional documents, including pages from internet sites related to the signs of internal bleeding, and decedent's medical records, were made a part of her sur-reply.

The M&R, which issued February 9, 2015, construed the complaint to assert a claim for wrongful death, pursuant to section 28A-18-2 of the General Statutes of North Carolina. It

concluded plaintiff had standing based on letters plaintiff submitted in response to the motions to dismiss, purportedly naming plaintiff as administrator of her husband's estate. The magistrate judge also rejected the assertion that plaintiff's failure to comply with section 28A-4-2(4) of the General Statutes of North Carolina[2] was a deficiency which stripped the court of jurisdiction. He further found plaintiff had properly invoked federal jurisdiction on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1332.

With respect to defendant Miles' assertion that plaintiff failed to comply with requirements for personal service, the magistrate judge recommended granting plaintiff an extension of 45 days to properly serve defendant Miles. Turning to the merits of plaintiff's claim, the magistrate judge found plaintiff in compliance with the statute of limitations, and further held that plaintiff sufficiently complied with Rule 9(j) of the North Carolina Rules of Civil Procedure.

Where there is no objection to the magistrate judge's summary of the allegations in plaintiff's complaint, the court hereby incorporates that portion of the M&R by reference. As pertinent here, plaintiff's husband, Lester Latka ("decedent"), was admitted to NHRMC on September 13, 2011 for a hernia operation. Defendant Miles performed the surgery, during which he also performed an ilionguinal neurectomy.[3] Also during surgery, defendant Miles used the drug

---

[2] This subsection states that "[n]o person is qualified to serve as a personal representative who . . . [i]s a nonresident of this State who has not appointed a resident agent to accept service of process in all actions or proceedings with respect to the estate, and caused such appointment to be filed with the court; or who is a resident of this State who has, subsequent to appointment as a personal representative, moved from this State without appointing such process agent." N.C. Gen. Stat. § 28A-4-2.

[3] An ilionguinal neurectomy is the excision of a nerve in the region between the hip and groin. See Dorland's Illustrated Medical Dictionary, 927, 953, 1281, 1362 (31 ed. 2007) (defining "ilioinguinal," "inguinal," "neurectomy," and "os ilium").

3

Marcaine, which is a vasodilator,[4] and closed the incision without stopping the bleeding or achieving normal blood pressure. The next day, decedent began to show signs of internal bleeding, including an elevated heart rate, stomach distention, flank hematoma and ecchymosis, dark blood in his vomit and stools, nausea, and lack of appetite. No one at NHRMC addressed these signs. As a result, plaintiff's husband bled to death on September 18, 2011. Plaintiff alleges that she has lost her husband's earnings as a result of his untimely death, and that, as a result, her house was foreclosed upon, and further that "this forced me to move back to N.Y. with my family around." (Compl., 3) (DE 4).

Attached to the complaint is a document bearing the letterhead of Richmond Surgical Associates PLLC, purportedly written by Frederick L.H. Sabido, M.D., a member of the Faculty of the American College of Surgeons and a Clinical Assistant Professor of Surgery at the College of Medicine at the State University of New York Downstate Medical Center. In his letter, Dr. Sabido states that a variety of errors occurred during the surgery, including specific allegations that decedent's treatment failed to meet the standard of care in several areas, including the use of thrombin spray, the failure to transfuse platelets, the injection of marcaine, the failure to achieve normal blood pressure before leaving the operating room, and the fact that it took "extra time" to perform the ilioinguinal neurectomy. (Id., 1-2).

---

[4] A vasodilator is a medication that opens blood vessels, allowing blood to flow more freely. Vasodilators, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/high-blood-pressure/in-depth/high-blood-pressure-medication/art-20 048154 (last visited March 12, 2015).

## DISCUSSION

A.   Standard of Review

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). A district court may address lack of subject matter in two ways: the court may find insufficient allegations in the pleadings, viewing the alleged facts in the light most favorable to the plaintiff, or, after an evidentiary hearing, the court may weigh the evidence in determining whether the facts support the jurisdictional allegations. Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999). Under the former analysis, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural motion as he would receive under a Rule 12(b)(6) consideration." Adams, 697 F.2d at 1219.

Under the second analysis, a court may "go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations" without converting the matter to summary judgment. Adams, 697 F.2d at 1219; Kerns, 585 F.3d at 192. "Where the jurisdictional facts are intertwined with the facts central to the merits of the dispute . . . the entire factual dispute is appropriately resolved only by a proceeding on the merits," and Rule 12(b)(1) is "an inappropriate basis" to grant dismissal. Adams, 697 F.2d at 1219-20. Rather, the court "should ordinarily assume jurisdiction" and "resolve relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." Kerns, 585 F.3d at 193.[5]

B. Analysis

Defendants object to the findings that plaintiff has standing, federal jurisdiction exists based on diversity of citizenship, plaintiff's claim is within the statute of limitations, and plaintiff has complied with Rule 9(j). For the reasons explained below, the court agrees with defendants that federal subject matter jurisdiction is lacking over plaintiff's wrongful death claim. Accordingly, defendant's motion to dismiss must be granted.

1. Wrongful Death Claim

Except in certain specified cases not applicable here, a federal district court has jurisdiction over a civil case only where the case raises a federal question under 28 U.S.C. § 1331, or satisfies the requirements of diversity jurisdiction under 28 U.S.C. § 1332. See Rayner v. Smirl, 873 F.2d 60, 63 (4th Cir. 1989) ("Absent diversity of citizenship, the jurisdiction of the federal district courts . . . exists only when a federal question is presented on the face of the plaintiff's properly

---

[5] Because the court dismisses this action on the basis of Rule 12(b)(1), it does not address defendants' arguments based on Rules 12(b)(2), 12(b)(4), 12(b)(5) or 12(b)(6).

pleaded complaint."). It is clear that plaintiff's complaint, asserting a claim for wrongful death under North Carolina law, does not "aris[e] under the Constitution, laws, or treaties of the United States" for purposes of raising a federal question to establish this court's jurisdiction. 28 U.S.C. § 1331.

In relevant part, the diversity statute grants federal district courts jurisdiction when "the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). In a diversity case, the court must consult state law to determine the nature of the litigant's rights and whether she is entitled to assert the clams she makes. Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 118 (4th Cir. 2004). A litigant bringing a diversity action can have no greater ability to assert legal rights created under state law than she would have in the state forum. Id.

In North Carolina, "[a] wrongful death action is a creature of statute and may be brought only as the authorizing statutes permit." Burcl v. N.C. Baptist Hosp., Inc., 306 N.C. 214, 217 (1982). North Carolina's wrongful death statute provides:

> [w]hen the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured person had lived, have entitled the injured person to an action to damages therefor, the person or corporation that would have been so liable, and [its] personal representatives or collectors . . . shall be liable to an action for damages, to be brought by the personal representative or collector of the decedent.

N.C. Gen. Stat. § 28A-18-2(a).

The North Carolina Supreme Court has interpreted the statute to provide that such a wrongful death action "may be brought *only* by the personal representative or collector of the decedent." Burcl, 306 N.C. at 217 (citing Graves v. Welborn, 260 N.C. 688, 690 (1963)). A "collector" is defined as "any person authorized to take possession, custody, or control of the personal property

7

of the decedent for the purpose of executing the duties outlined in [N.C.] G[en]. S[tat]. 28A-11-3 [North Carolina's statute pertaining to the duties and powers of collectors.]". N.C. Gen. Stat. § 28A-1-1(1). A "personal representative" is defined to include estate executors and administrators. Id. § 28A-1-1(5). Dismissal is appropriate for wrongful death actions which are not brought by the estate's personal representative or collector. Journigan v. L. R. Ice Co., 233 N.C. 180, 182-83 (1951).

The complaint does not allege that plaintiff is the personal representative or collector for the decedent. Nevertheless, as noted above, plaintiff's response to the motions to dismiss attached letters of administration from the Clerk of the Brunswick County (N.C.) Superior Court, naming plaintiff as the administrator of her husband's estate. (Pl.'s Ex. 2, 6-7) (DE 24-2); see also N.C. Gen. Stat. § 28A-2-1 (granting clerk of the superior court of each county jurisdiction over the administration of estates, including letters of administration).[6] The court will assume for purposes of the present discussion that this is sufficient to allege that plaintiff is a personal representative.

As defendants note, however, plaintiff's purported status as the estate's personal representative raises a separate issue in establishing diversity jurisdiction. Under the diversity statute, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2). Two unpublished Fourth Circuit opinions have considered the issue and concluded that section 1332(c)(2) would apply to estate administrators or administratrices bringing wrongful death actions, but offer only minimal legal analysis. Janeau v. Pittman Mfg. Co., No. 92-1923, 1993 WL 280354, at *4 n. * (4th Cir. July 27, 1993); Myles v. Laffitte, No. 90-2004, 1990 WL 123861, at *1 (4th Cir. Aug. 28, 1990). A number of courts,

---

[6] Although the letters referred to the estate of "Leskez Latka," the court presumes for present purposes that these letters refer to plaintiff's husband.

8

including courts within and outside of this circuit, have looked to state law to determine whether a personal representative in a wrongful death action is a "legal representative of the estate" for purposes of analyzing this provision. See Thomas v. Brooks Run Mining Co., LLC, 504 F. Supp. 2d 121, 123-129 (S.D.W. Va. 2007) (gathering cases).[7]

In Thomas, the court determined that section 1332(c)(2) requires a court to focus on "the representative capacity of the person bringing the action, rather than on whether the action was brought for the benefit of the decedent's estate." Thomas, 504 F. Supp. 2d at 127. It observed that, under West Virginia law, the personal representative "must generally be the administrator of the estate appointed by the appropriate County Commission." Id. at 127. The court concluded that "the personal representative who brings a West Virginia wrongful death suit is the legal representative of the decedent's estate, even though the suit is brought on behalf of the statutory beneficiaries and not the estate." Id.

North Carolina's General Statutes empower the "personal representative" to perform "every act which a reasonable and prudent person would perform incident to the collection, preservation, liquidation or distribution of a decedent's estate so as to accomplish the desired result of settling and

---

[7] See also Steinlage ex rel. Smith v. Mayo Clinic Rochester, 435 F.3d 913, 914-15 (8th Cir. 2006) (holding that wrongful death trustee was a representative of surviving spouse and next of kin, rather than estate, and therefore that section 1332(c)(2) did not apply); Tank v. Chronister, 160 F.3d 597, 599-601 (10th Cir. 1998) (noting that Kansas law requires wrongful death statute to be brought by decedent's heirs-at-law, and only for their "exclusive benefit," and therefore that section 1332(c)(2) did not apply); Milam v. State Farm Mut. Auto Ins. Co., 972 F. 2d 166, 167-68 (7th Cir. 1992) (concluding that section 1332(c)(2) did not apply because Louisiana law does not regard decedent's estate as an entity on behalf of which a lawsuit can be brought); Brown v. Mahdi, 482 F. Supp. 2d 1300, 1304 (D. N.M. 2007) (holding that, although wrongful death statute in New Mexico prioritized the heirs of the decedent in any recovery, section 1332(c)(2) nevertheless applied because estate could recover in the event that there were no heirs); Vaka v. Embraer-Empresa Brasileira De Aeronautica, S.A., 303 F. Supp. 2d 1333, 1334-35 (S.D. Fla. 2003) (holding that section 1332(c)(2) applied where Florida's wrongful death statute allowed estate to recover); Winn v. Panola-Harrison Elec. Co-op., Inc., 966 F. Supp. 481, 483 (E.D. Tex. 1997) (holding that section 1332(c)(2) did not apply, where Texas wrongful death statute was for the benefit of the surviving spouse, children, and parents of the deceased); James v. Three Notch Med. Ctr., 966 F. Supp. 1112, 1116 (M.D. Ala. 1997) (holding that section 1332(c)(2) applied to wrongful death actions under Alabama law because the state defined "personal representative" as "the executor or executrix of the decedent's will or the administrator or administratrix of an intestate's estate").

9

distributing the decedent's estate in a safe, orderly, accurate and expeditious manner as provided by law." N.C. Gen. Stat. § 28A-13-3(a). As noted, these powers include the power "[t]o maintain actions for the wrongful death of the decedent." Id. § 28A-13-3(a)(23); see also § 28A-18-2(a) (holding that wrongful death action is "to be brought by the personal representative or collector of the decedent"). This language establishes that the "personal representative" in North Carolina represents the estate of the decedent, and therefore is the "legal representative of the estate" for purposes of applying section 1332(c)(2).

The court's analysis thus turns to the citizenship of the decedent. State citizenship is determined by domicile. Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc., 145 F.3d 660, 663 (4th Cir. 1998). "Domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989).

The complaint fails to allege facts sufficient to establish that plaintiff's husband was a citizen of a different state from defendants. The only facts alleged concerning decedent support that he was a citizen of North Carolina. In particular, plaintiff alleges that decedent was admitted to a North Carolina hospital, suggesting that he was domiciled in North Carolina at the time of his death. Furthermore, plaintiff alleges that her house was foreclosed upon following decedent's death, and that "[t]his forced me to move back to N.Y. with my family around," further suggesting that she and decedent were domiciled in North Carolina at the time of death, and that she only changed her intent to remain as a consequence of the death and the ensuing financial hardship. (Compl., 3). Likewise, plaintiff's only allegations relevant to defendants' citizenships is found in their residential addresses, both located in Wilmington, North Carolina.

10

Because the only factual allegations support that defendants are North Carolina citizens, and that decedent (and therefore, plaintiff herself, as legal representative of decedent's estate) are likewise North Carolina citizens, plaintiff fails to allege facts showing that decedent and defendants are "citizens . . . of different states," as she is required to do by 28 U.S.C. § 1332(a)(1). Thus, to the extent plaintiff brings a wrongful death claim as personal representative of the estate, the claim must be dismissed for lack of diversity jurisdiction. Janeau, 1993 WL 280354, at *4, * ("Accordingly, [plaintiff] was deemed to be, in her capacity as administratrix, a citizen of North Carolina and was not in diversity of citizenship with . . . North Carolina corporations"); Thomas, 504 F. Supp. 2d at 126-29 (holding that widow who brought claim as personal representative of decedent's estate was a citizen of Virginia for purposes of 28 U.S.C. § 1332, because decedent was a citizen of Virginia at death, even though widow was a West Virginia resident and sued in West Virginia state court).

Upon the legal framework detailed above, the court lacks jurisdiction over plaintiff's wrongful death action. Insofar as plaintiff brings suit as a beneficiary of the estate, she is prohibited from doing so because the right to bring a wrongful death suit is reserved to the personal representative. Burcl, 306 N.C. at 217. Insofar as plaintiff brings a wrongful death suit as the personal representative, the court lacks jurisdiction because the facts alleged do not support diversity of citizenship between decedent/plaintiff, as legal representative of the estate, and defendants. 28 U.S.C. § 1332(c)(2).[8]

---

[8] It bears note that Fourth Circuit precedent interpreting North Carolina's wrongful death statute prior to the passage of section 1332(c)(2) suggests that the personal representative's citizenship does not necessarily foreclose federal jurisdiction. In Miller v. Perry, 456 F.2d 63 (4th Cir. 1972), the court considered whether diversity jurisdiction existed in a North Carolina wrongful death action, where a North Carolina administrator brought suit against North Carolina defendants. Id. at 63. Despite the absence of diversity between the nominal plaintiff and defendants, the court held that the citizenship of the *beneficiaries* of the wrongful death, rather than the citizenship of the administrator, would be controlling for diversity purposes. Id. at 67. The issue of whether diversity jurisdiction would be established if a party other than plaintiff were named personal representative is not now before the court, however.

11

      2.      Other Claims

With the failure of plaintiff's wrongful death claim, any other claims must also be dismissed. In Nicholson v. Hugh Chatham Mem'l Hosp., Inc., 300 N.C. 295 (1980), the court recognized that "a spouse may maintain a cause of action for the loss of consortium due to the negligent actions of third parties." Id., at 304. However, because such action posed a risk of double recovery, and because the court viewed the injury involved in such actions as one "to the marriage as an entity," id. at 303-04, the court required that such action be "joined with any suit the [injured] spouse may have instituted to recover for his or her personal injuries." Id. at 304. In this case, any suit that decedent may have instituted is encompassed by the wrongful death statute. See N.C. Gen. Stat. § 28A-18-2 (covering claims "caused by a wrongful act, neglect or default of another, such as would, if the injured person had lived, have entitled the injured person to an action for damages therefor"). Because the wrongful death action must be dismissed, any loss of consortium claim is also dismissed. See Jones v. Southcorr, L.L.C., 324 F. Supp. 2d 765, 783 (M.D.N.C. 2004) (spouse's claim for loss of consortium dismissed, because it was derivative of her husband's dismissed claims); Emmons v. Rose's Stores, Inc., 5 F. Supp. 2d 358, 366 (E.D.N.C. 1997) (summary judgment granted against spouse's claim for loss of consortium because it was derivative of husband's claims for sexual discrimination, intentional infliction of emotional distress, breach of contract and retaliatory discharge); Stokes v. Southeast Hotel Props., Ltd., 877 F. Supp. 986, 1000-01 (W.D.N.C. 1994) (summary judgment granted against spouse's claim for loss of consortium, where husband's claim for personal injury was barred by three-year statute of limitations); Keys v. Duke Univ., 112 N.C. App. 518, 520 (1993) (plaintiff's claim for loss of consortium dismissed where it was not brought under wrongful death statute); King v. Cape Fear Mem'l Hosp., Inc., 96

12

N.C. App. 338, 342 (1989) (loss of consortium claim dismissed because underlying wrongful death claim had been dismissed for untimeliness).

Moreover, "any common law . . . claim which is now encompassed by the wrongful death statute must be asserted under that [statute]." Daniels v. Nat'l R.R. Passenger Corp., No. 5:11-CV-290-BO, 2011 WL 5870056, at *2 (E.D.N.C. Nov. 22, 2011) (quoting Christenbury v. Hedrick, 32 N.C. App. 708, 712 (1977)); McDonald v. Suggs, No. 5:07-CV-339-D, 2008 WL 2129860, at *5 (E.D.N.C. May 20, 2008); Keys, 112 N.C. App. at 520. A claim is "encompassed by" the wrongful death statute where it seeks "items of damage which might conceivably have been . . . includable in an action for damages for death by wrongful act." McDonald, 2008 WL at *5 (quoting Christenbury, 32 N.C. at 712). The following types of damages recoverable for a wrongful death action:

> (1) Expenses for care, treatment and hospitalization incident to the injury resulting in death;
> (2) Compensation for pain and suffering of the decedent;
> (3) The reasonable funeral expenses of the decedent;
> (4) The present monetary value of the decedent to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected;
>    a. Net income of the decedent,
>    b. Services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered,
>    c. Society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered;
> (5) Such punitive damages as the decedent could have recovered pursuant to Chapter 1D of the General Statutes had he survived, and punitive damages for wrongfully causing the death of the decedent through malice or willful or wanton conduct, as defined in [N.C. Gen.Stat.] 1D–5;
> (6) Nominal damages when the jury so finds.

N.C. Gen. Stat. § 28A-18-2(b).

13

Case 7:14-cv-00010-FL   Document 52   Filed 03/26/15   Page 13 of 14

From the facts alleged, the court does not discern any claims plaintiff could bring that would not be encompassed by the wrongful death statute. Accordingly, the complaint must be dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss (DE 16, 26) are GRANTED. The clerk is hereby ORDERED to close this case.

SO ORDERED, this the 26th day of March, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge